Kenneth Tate-Wayne, Counselor for Appalachia State of California Counsel come forward Counselor you have the opportunity to reserve some time for rebuttal I'd like to reserve three minutes your honor I will tell you when three minutes are available please proceed May it please the court my name is Samuel Maisel and I represent the appellant here in the debtor below Gardens Regional Hospital and Medical Center this is actually a straightforward appeal the facts below are not disputed the applicable law is not disputed and the question for this court is whether the bankruptcy court below correctly applied the law to the facts so let's look at what's at issue here it is complicated as some courts have said that Medicare and Medicaid rules are virtually impenetrable this case exemplifies that to some degree what the court below said was the doctrine of recoupment is satisfied because the countervailing obligations all arise as the Ninth Circuit has told us it must out of the same transaction or occurrence the doctrine of recoupment is only satisfied if the obligations on both sides arise out of the same transaction or occurrence and have a logical relationship and that logical relationship has to arise according to the Ninth Circuit out of the same aggregate set of operative facts the courts are required to analyze the essential facts of the various claims you have to look at the facts of the claims that are offset by the side by the here the state of California so let's look at the facts here first there's three different kinds of payments at issue one is the obligation from the hospital to the state that is called the hospital quality insurance fee and it is a the hospital is obliged to pay it because of a single fact the operative underlying fact is that the hospital has a license it doesn't have to participate in the Medi-Cal program it doesn't have to have a Medi-Cal but everybody who's not exempt has to pay it correct that's correct your honor the obligation arises out of the existence of the hospital having a license no Medi-Cal provider agreement is required participation in the Medi-Cal program is not required and participation in the hospital quality insurance fee program let me put it slightly differently aren't you kind of saying that one set simply subsumes the other I mean one there's a large set of people who have to pay the HQA fees not everybody who pays the HQA fees is going to get a resulting benefit because they're not all going to have Medi-Cal issues right that is absolutely okay so that so what you're telling me is there's not no logical relationship between those two because one's bigger than the other no no I don't think I'm saying that your honor I think I'm saying that there's no logical relationship between the fee and for example the next kind of payment well that that's a calculation issue right that's a different question let's keep those separate your honor the the you have to look at the underlying facts that give rise to the liability that is to be offset so the underlying fact for the hospital quality assurance fee is the existence of a license if you have a license in the state of California you pay the fee now the obligations from the state to the hospital that were set off offset were two different kinds one is these direct payments that's the state's term and we'll use it here the direct payments are payments made by the state to the hospital for treatment of Medi-Cal beneficiaries they're paid according to a fee schedule they're in fact these kind of obligations are what we normally see in health care bankruptcies they are the kinds of discussions that the Ninth Circuit's had in TLC hospitals for example the second set of payments from the state that were offset were the supplemental payments under the hospital quality assurance fee program the calculations are complicated the one of the primary factors is the number of Medi-Cal patient days in the hospital to figure it out but what is clear is that when you look at the underlying as the court has told us the underlying facts what are the aggregate set of operative facts that give rise to each liability they're not the same the fee is paid because you have a license the direct payments are paid because you treat Medi-Cal beneficiaries and are calculated off of a fee schedule and the supplemental payments are based on a completely different set of calculations under the quality assurance fee program let me see if I'm with you so far as part of what you're saying that there may be some relationship between the supplemental payments and the HQA but there's none between the HQA and the what you call the direct payments I think is that fair I realize you understand you've got a calculation argument too but so far so good yes your honor it is clearly there's a more attenuated relationship that at least the fee and the supplemental payments come out of the same underlying statute the hospital quality you know it may not matter but did anybody break down what that what those numbers were between the supplemental fee and the direct pay your honor we it didn't matter at this point doesn't matter anymore but but I believe that there's significantly more on the hospital quality sure the supplemental payment than there was on the oh really okay I think it's more okay can I ask you about the HQA fee what I don't want you to try to explain the formula tell me second what are the what are the primary determinants what are the variables that primarily drive the amount of the HQA fee that hospitals pay I your honor the the I don't know the calculations for the formula honestly there there is a formula based on Medi-Cal patient beneficiary days and it is described in the briefs the the problem for the state and that what this court has to grapple with is the fact that it doesn't matter for purposes of what's the underlying event giving rise to liability when you look at the operative claim what's it based on it's based on one determinant factor and that is the existence of the hospital's license the rest is is as you described it your honor a calculation issue and that isn't what this Ninth Circuit has told us when you look at cases like TLC hospitals they didn't go through those issues when the Ninth Circuit in TLC hospitals said that the federal government was entitled to recoupment first of all the facts were much better for the government there it was over payments for patient care here we call them direct payments over payments in the past recouped against the ongoing direct payments that isn't there is no similar facts here okay can I let me let me explore there with you a bit what I think the TLC court said was we have to find a logical relationship we can find it here and in fact fairly easily because what happens is you're paid on an estimated basis and you can't true it up every day so you necessarily have to true it up at the end of a rational accounting period and because that true up happens you know tit-for-tat if you will this is an easy case where you can find it the same logical relationship was there anything in that case that said boy if we didn't have these facts we'd never get there well no your honor they did there wasn't I mean there's no rule that says gee without this we wouldn't even be talking about this it they what they apply they applied that circumstance to the standard and found it satisfied the standard yes game over right that's it yes your honor okay but it's so I should do the same thing here right we should do the same thing here you should look at the underlying operative facts that give rise to the liability and if they do not have a logical relationship if they don't arise as the Ninth Circuit has said out of the same aggregate fact then you shouldn't allow the doctrine of recoupment to be applied would you would you address it seems to me that the reason that you did not prevail with the underlying court is sort of the taint fare principle which was it ain't fair that you are participating in this program and receiving monies under this program and not paying your your fee and I think that's what what's what sort of driving the what drove the underlying court and I understand your argument which is it's it's a more sophisticated analysis than that well sometimes the big picture prevails and maybe the big picture prevailed here your honor I I don't dispute that doctrine of recoupment is an equitable doctrine and bankruptcy courts are in a loose sense courts of equity but we also know that because recoupment is a non-statutory exception to the general principles of bankruptcy law courts have repeatedly said that it should be applied closely it should not be broadly expanded and while the bankruptcy court below said repeated the Ninth Circuit's language saying that the doctrine should be the logical relationship test should be applied liberally and flexibly it also then ignored the Ninth Circuit's statement in TLC hospitals and I'll quote the logical relationship concept is not to be applied so loosely that multiple occurrences in a continuous commercial transaction would constitute one transaction so I understand it's an equitable doctrine but that cuts both ways what I wanted you to address was why isn't it why is it fair or not fair in the consents of this case I mean is there is there something unfair about as I understand it you were paid you provided services for what you were paid no your honor I mean that's the point to recoupment we provided to talk about fairness this hospital provided care and the record I don't think is in dispute that it's a much was it was a much-needed hospital in a poor community but I think the point was the setup for recoupment was 20% of what was owed right it was not a full amount correct your honor but this hospital there's a reason it was in bankruptcy and is now closed it was financially stressed sure and like many of these hospitals a huge percentage of its patients come from government payors like Medicare or Medicaid so a 20% reduction in a country where the average hospital profit margin if there is one is less than 1% if you take 20% out of 80% of your patient base you're in the red okay just just following up I don't mean to spend too much time on this 4 point something million of this was a post petition obligation that simply wasn't paid is that right 4.3 million of this was a post petition obligation was monies offset for some of it was offset we know for patient care provided by the hospital to Medi-Cal beneficiaries if the court wants to discuss where the fairness issue is I would suggest it is grossly unfair to the hospital and its creditors now to allow the state to self-help pay itself for medical care that there's no dispute the medical care was provided okay I have a maybe this will come up more in the rebuttal I have a philosophy problem with this it's not you're right this is this is not in the statute it's an equitable doctrine it's not really written down anywhere in courts try to apply it so we get to this problem are we talking about the essence of something or the attributes of something and I think a lot of what we're talking about here is the attributes of something which is why TLC only helps me so far if you know in this case you win it doesn't say in all other cases you lose so I'm trying to figure out what is really the essence of this thing your honor that's exactly right because the doctrine of recruitment is so fact-specific it you have to try to delve into the underlying facts of the obligations that were offset here and decide do they have a logical relationship with the Ninth Circuit tells us is that means do they arise out of the same aggregate set of operative facts and if they don't then recoupment should not be allowed that's the problem here now counsel you got three minutes left but I want you to ask just a question why does this arise under this kind of motion as opposed to a motion to assume the contract or something like that well first of all your honor we're I'm not conceding this is a contract yeah but the the issue came up late in the case because there was efforts to sell the hospital that eventually for lots of reasons proved unsuccessful so the hospital was closed and then sold closed that resulted in a different appeal to the district court but it came up late because while until the resolution of the hospital status was resolved you couldn't address these issues really if you stop now I'm going to give you three minutes on rebuttal thank you your honor thank you very much please support Deputy Attorney General Kenneth Wang on behalf of police state of California and California Department of Health Care Services this case is based upon statutory grounds and contractual grounds in the statutes the debtor had to pay a quality quarterly quality assurance fees to the state to the department that is set forth in welfare institutions code 14169.52a the debtor failed to do that the debtor continued to receive payments from the department because the debtor failed to pay the quality assurance fees the department recouped the money owed the 4.3 million dollars is the amount of quality assurance fees the debtor failed to the statutory requirement was also incorporated into the Medi-Cal provider agreement that the debtor signed in the provider agreement it says the debtor in order to receive Medi-Cal payments in order to be a provider the debtor had to pay the quality assurance fees sorry didn't the debtor have to pay those fees even if the debtor didn't sign up for Medi-Cal? The debtor will be required to pay the quality assurance fees but if the debtor failed to pay the quality assurance fees or the debtor refused to pay that fee the debtor would never have become a Medi-Cal provider my client at Department of Health Care Services would never have allowed the debtor to become a Medi-Cal provider to receive Medi-Cal payments so those two things go hand in hand but let me go take a step back and show how the fees and the payments are related the fees are paid by the hospitals and then there's federal matching dollars after the federal matching the payments are made to the hospitals be it through grants to public hospitals or supplemental payments to the private hospitals so that is a one stream flow of funds the fees are necessary in order to make the payments to the hospitals. So is the HQA fee based at all on the amount of Medi-Cal services that the particular provider provides? The fees is based upon patient days. But is it specific to Medi-Cal or just all patient days? All patient days. Okay and does Medi-Cal services in particular factor in at all to the calculation of the HQA fee? Not that I'm aware of. I mean I had a different understanding I thought it was Medi-Cal patient days and maybe we had. Maybe just that supplemental payment. Okay. Maybe I misunderstood that too. Yeah. Sorry. So that is why there's the statutory framework. That is why California legislature require the hospitals to pay the fee. So let's look at the TLC. Let me just ask you a quick question here. I mean basically what you're saying, you're saying two things on the contract side. It was a contract remedy that they acknowledged, right? Right. Well, I mean a set off is a contract remedy they acknowledge too. But so what? I mean you can't do a set off. So what is it other than you're saying there's this gating issue, they never would have been allowed and we don't have any evidence of what, who was allowed and who wasn't. Other than you're saying they never would have been allowed to be a contract participant counterparty, the fact that it was a contract remedy by itself to me doesn't resolve whether it's recoupment or set off. But so let's look at the interconnected relationship between the fees and the payments. The fees have to be made so the state can get federal matching dollars to make the payments. That's with respect to both of the fees that would have been paid to the provider. To MediCal. To both, right? Yes. To MediCal payments. That is why in welfare institutions called 14169.52H, it says if any hospital fails to pay the quality assurance fee, the department can recoup that money from any MediCal payments. That is the statutory framework under which we're operating. Well, it says you can collect. Does it actually say recoup? It says we can deduct. Okay. So this is similar to the TLC case. But you have a contract remedy. Okay. Great. But, Your Honor, we have to look at the interrelated connection between the funds, the HQA fees and the payments. That is a standard to determine whether or not there's a valid recoupment. And under the statutory framework, under the payment system of MediCal, there is a relationship between the fees coming in and the payments to go out to the hospitals. That's just all I'm saying is that's a totally different question from whether the contract says you can deduct something. That's a contract remedy that people agreed to, and that could have been a sell-off. That's a different question from what the relationship is. What I'm trying to show is that there is a relationship based upon the funding system of MediCal. Sure. And that's why it says within the statutory framework. And that statutory requirement is incorporated into the contract. As a condition to be a provider. That's a different question. Right. As a condition to be a provider, the provider agreement says the provider has to agree to make the quality assurance fee payment. So that is why this recoupment is valid based upon the statutory requirement and also based upon the contractual agreement. Had the debtor said, no, we don't want to pay the quality assurance fee, the department would have said, no, you cannot be a MediCal provider because you have to pay into the system in order to receive something back in the form of MediCal payments. Is that true? I mean, they continued to provide services and receive payments long after they stopped making the payments. So apparently it wasn't a condition that you enforced. They continued to provide services. Without paying the fee. They provided services. And that went on for months and months. They provided services. And then they billed the department afterwards for reimbursement of the services provided at the back end. So instead of making the payments to the debtor, the department deducted the payments that should have gone to the debtor to recover the quality assurance fees owed. There was a lag between those two, right? There was a period of time. We know there was pre-petition, HQA fees due, and post-petition. So the pre-petition part had not been paid by the time the bankruptcy case was filed. So there must have been a period of time when MediCal was not fully deducting as much as it could have to kind of keep up, right? I mean, otherwise there wouldn't be that pre-petition. Yes. My client deducted 20 percent of the payments that should have gone out to the debtor. So let me see if I understand this part right. You take money from the critical care providers. Yes. You call it a fee. Yes. And then you go to the federal government and say we've got this money, match it. Yes. And then you turn around and give it back to the hospitals. Yes. So this is just a device to increase the amount of federal contributions. And a device to increase the federal contribution so that there will be money to make payments to the hospitals, to increase additional payments to the hospitals. So there is some. So that's why there is a relationship between the fees coming in and the payments to go out. It also redistributes among hospitals, right, because all hospitals pay the HQA, not all hospitals get MediCal. Right? All hospitals pay HQA fees, but the hospitals that provide MediCal services get MediCal payments. In the form of direct payments or supplemental payments. So there is a redistributive nature. In this instance, the debtor provided the services for which they received the MediCal payments, right? The debtor, had the debtor paid the co-auditions fees. No, no, no, you changed my question. My question was they actually provided these services. They provided the services. For which they received the reimbursements. For which they would have received the reimbursements had they paid the co-auditions fees. In this case, because they didn't pay the co-auditions fees, the payments were deducted to recover the co-auditions fees out. In this instance, post-petition. Now, there's some kind of accounting lag time between those two, right? There has to be a lag time because services have to be provided first. A quarterly trip or something? Yeah, a quarterly trip. Okay. Here's my, I don't mean to beat this to death. Here's my question. You're treating this as if it's a gating issue. They wouldn't have been in a contract but for promising to do X. Well, everybody's going to promise to do X. I mean, is there a scenario in which somebody hasn't paid an HQA fee and they apply for MediCal status and you say, no, you can't do it? You haven't paid an HQA fee? Because otherwise what happens is they just don't perform under a contract. And after the fact, you say, well, you haven't performed under the contract. Let me recoup or set off or whatever. But it's not really a gating. It's not really treated like a gating issue. And that's what you're trying to present it to me as. No, no, no. I'm sorry. This is not really a gating issue per se. What I'm saying is because of the funding system, because of the same stream of flow. That I get. That I get. So this is similar to the TLC case. The TLC case, because of the statutory framework, how the money comes in, how the providers have to chew up, and how there will be adjustments. That's why the Ninth Circuit in that case found there to be a relationship. This is the same scenario in the TLC case. Money needs to be paid so that there will be money to be paid out to the hospitals. So, well, TLC was a little bit narrower. And what happened in TLC was somebody was, services were provided, money was owed. It was paid on an estimated basis, which, of course, is never entirely accurate. And then there was a chew up. And the Ninth Circuit said, look, it's the same money and adjustment. So this is, I mean, they didn't say it was an easy case, but it was a pretty easy case. You're telling me here that money is really coming from different sources, but it's all kind of the same thing. That's a markedly different fact pattern for me from TLC. That may not mean that it's outside the standard, but it's very different. We believe that the money is still in the same, goes into the same pot of money. Fees come in, matching dollars, goes in the same pot, and money gets redistributed. But let me point out, too, what the TLC case says right here. It says, in order to be reimbursed, however, the participating facility must agree to certain terms as set forth in 42 U.S.C. 1395. So even if we were to talk about the contractual agreement, that's what the TLC case says. You seem to be arguing that you're entitled to recoupment because there's something in the contract that provides for what could arguably argue just a set off. It might be recoupment. It might be a set off. That's what we're trying to figure out here. And the difference, I think, is that in a recoupment case, it's not that A owes money to B and, therefore, B gets to set off a debt because there has to be some kind of mutuality to that debt. There has to be some kind of equitable reason for B to keep the money because A hasn't done something that they were supposed to do. And so that's the question that I try to get counsel to address, and I want you to address this. Why is this inequitable? Why is it unfair that this hospital, this critical care provider that provided the services to these people, they did provide those services, didn't they? Why is it inequitable for them to get compensated for that? This would be inequitable for the very reason that hospital needs to pay fees into the system so the state could get money to pay the hospitals for the services provided. If every hospital refuses to pay the quality assurance fees, the state will have no money, no matching dollars to pay the Medi-Cal payments so the entire Medi-Cal system will collapse. So governmental programs abhor free riders is what it comes down to, right? Yes. Okay. But wouldn't it also be permissible under federal law for the state to fund that matching contribution out of general revenues? I mean, does the state have to assess this against other hospitals in order to generate the matching funds for the feds? The quality assurance fees increases the federal matching dollars for this. If the state taps the money from the general revenue funds, then that would create less money for other welfare systems when there is a pot of money on the federal end that the state could tap into. So why do we walk away with this pot of money when it's readily available and take away money for other welfare programs? One thing I'm learning about from this case is how thoroughly broken our health care finance system is. We can't fix it in this case, but it's mind-boggling how bad this is. Right. So it is inequitable because other hospitals out there just say, no, we don't want to pay quality assurance fees, although we're Medi-Cal providers. We want to get payments, but we don't want to fulfill our obligation to the system. We only want to get a benefit from the system. Thank you. Thank you. You realize, of course, that this is the only civilized country in which bankruptcy is an option for people for medical debts. Your Honor, please. In every other civilized country, that doesn't happen. I've spent 20-plus years specializing in health care bankruptcies. You're just starting to get a feel of what this is like. It doesn't happen in Japan. It doesn't happen in any Western nation, Your Honor. Any Western nation. Okay. You've got three minutes. Thank you, Your Honor. Three, not two. Let's talk about the issues you just heard because they repeat what the bankruptcy court did wrong below. First, the State argues the statutes provide for recoupment. Therefore, the statutes provide the logical relationship. If that were true, then every government basically has a get-out-of-jail-free card because every government program has these offset provisions. The tax division would be able to argue recoupment if it held a tax refund to pay the Department of Agriculture for a payment, a prior overpayment on an agricultural program. That's the same thing the bankruptcy court said below. The bankruptcy court below said that the Medicare provider agreement creates the sufficient logical relationship. The statute creates the sufficient logical relationship. Neither of those are true. If you look at the court in TLC Hospitals, they could have stopped where the bankruptcy court and the State want you to stop. They could have said the Medicare provides, the Medicare statutes provide for these offsets. Therefore, they are recoupment because the statutes automatically establish a logical relationship. That isn't what the Ninth Circuit Court did here, did in TLC, and it shouldn't be allowed here. The next argument you heard from the State repeats what the bankruptcy court did wrong below. It says the agreement, the contract, as you referred to, that that agreement has a provision that allows the parties to offset. So therefore, it automatically is recoupment because of their existence of an agreement that creates a logical relationship. We know that's not true because, again, in TLC Hospitals, the Ninth Circuit could have stopped at the existence of a Medicare provider agreement. It provides the same rights to the government that the State exercised here. But the Ninth Circuit didn't say that was sufficient, and it isn't sufficient because if it was, every contract, every commercial contract that allowed for a party to offset, that would then tell the court it is automatically recoupment. It's not set off. It's automatically recoupment because a provision in a contract or agreement creates a right of offset. Coming at it from the other direction, this is not your everyday contracting party. It's the Federal and the State governments who have a lot of public policies at stake. Is it anathema for them to say, we look at this this way, we look at this as one big package, so therefore, we can deduct from any source? No. No, it's not. They could have done that, right? And that wouldn't be wrong. I mean, that wouldn't be. It's not right or wrong, Your Honor. The government, in fact, does exactly what you described. That's what I'm saying. I mean, the government's not the government's a different contracting party, and they're not just contracting for financial benefit. They're contracting for public policy, right? That's correct, Your Honor. Okay. But that isn't what the courts tell us. That is what the bankruptcy court said below and what the State argued this morning, that because the State needs the money for a lot of good social purposes, it automatically qualifies as a doctrine of recoupment. That isn't right. And we know that's not right. The motive of the party or the financial purposes of the party seeking to conduct the offset can't establish the logical relationship. That's what the bankruptcy court said. That's what the State has told you. Thank you, counsel. Thank you, Your Honor. Thanks very much. This case is submitted. I want to thank counsel for their excellent time and argument. Thank you, Your Honor. Please call the next case. Yes, Your Honor.
judges: Kurtz, Faris and Lafferty